UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PROPERTY-OWNERS INSURANCE COMPANY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Cause Number: 3:13CV399-PPS |
|  | ) |  |
| JOHN PARKE, CENTRAL RENT-A-CRANE, INC. and D-T CONSTRUCTION SERVICES, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**OPINION AND ORDER**

John Parke was seriously injured when a crane from Central Rent-A-Crane knocked over the roof trusses on which he was working. At the time of the accident, Mr. Parke was employed by D-T Construction. This is a declaratory judgment action wherein D-T's insurer, Property-Owners Insurance Company, seeks a declaration that it owes no duty to defend or provide coverage to Mr. Parke, D-T or Central Crane. D-T has not responded to the lawsuit and Parke is only a nominal defendant at this point because he has since settled his personal injury case in state court and thus has no real interest in the outcome of this case. Currently pending before me are Property-Owners' and Central Crane's cross-motions for summary judgment, as well as Central Crane's motion to strike. (DE's 60, 62, and 66.)

**Factual Background**

D-T Construction contracted with Central Crane to supply a crane and crane operator to a construction site to assist in setting trusses in the construction of a church.

(DE 63-3 at ¶7.) The crane operator supplied by Central Crane was a man named Charles Patterson. (*Id*. at ¶10.) John Parke, one of D-T's employees, was atop one of the trusses when it was being set by the crane. (DE 63-4 at 3.) Somehow the truss collapsed with Mr. Parke on top of it, and he fell 20 feet to the ground as a result. (*Id*.) He was seriously injured in the fall. D-T had rented the crane from Central Crane for less than two days, and Mr. Patterson estimated he was on the job for no longer than a day and three-quarters. (DE 65-6 at 7, internal p.159:17-18.)

After the accident, Parke sued Central Crane and other parties (who are not involved in this lawsuit) in state court in Wabash County, where the accident occurred. D-T was not a defendant in that action likely due to the fact that Parke's exclusive remedy against D-T, as his employer, would have been through the worker's compensation system. I am told by Property-Owners that D-T was a third-party defendant in the state court litigation having been sued by one of the defendants in that case, Martin Drafting and Design. That third party case was settled. (DE 86 at 4). But importantly, D-T was not sued by Central Crane in the state court litigation, or at any other time as a far as I can tell.

As mentioned at the outset, Property-Owners insured D-T Construction. At some point after the state case was filed, Central Crane sought insurance coverage under D-T's policy issued by Property-Owners, requesting that Property-Owner's defend Central Crane in the Parke lawsuit. This request for indemnification was based upon an alleged indemnification agreement between Central Crane and D-T which is contained in the crane rental agreement (DE 63-6 at 2, ¶4.) Under the terms of the rental agreement,

2

Central Crane leased the crane and crane operator to D-T, and D-T agreed to indemnify Central Crane from all claims for injury to persons arising out of the operation of the crane, but not for Central Crane's sole negligence. (*Id.*)

It is clear from the record that Central Crane, through its lawyer, sought indemnification from D-T (DE 63-8 at 2-3), and then later sought coverage from Property-Owners. (DE 1 at ¶16). But as mentioned above, it is also clear from the record that Central Crane never sued D-T or otherwise brought a claim against D-T. Property-Owners tells me that "D-T informed Property-Owners of Central Crane's claim for defense and indemnification." (DE 86 at 2.) But noticeably absent from this representation in Property-Owners' brief is a citation to any *evidence* supporting that proposition. (*Id.*) I'm puzzled why no lawsuit or claim has ever been brought by Central Crane against D-T. In any event, at this point, any liability of D-T to Central Crane is speculative at best which raises the question whether there exists an actual controversy between D-T and its insurer, Property-Owners.

In response to Central Crane's request for coverage, Property-Owners agreed to defend Central Crane, but did so under a reservation of rights. (DE 60-12 at 5.) For reasons that are a little unclear, Central Crane then declined to use the attorney provided by Property-Owners, and it ultimately settled with Parke without informing Property-Owners. That settlement occurred in August 2015, but the terms of the settlement are unknown to the court. (DE 57 at ¶4.)

During the state court litigation, but prior to the settlement, Property-Owners filed this action seeking a declaratory judgment to determine "the respective rights and

3

responsibilities of the parties under the policy issued by Property-Owners to D-T Construction." (DE 1 at 22.) Property-Owners specifically requested in its complaint a declaration of no duty to defend or indemnify Central Crane but curiously absent from the complaint is any similar request relating to D-T. (*Id*.) Property-Owners and Central Crane have filed cross-motions for summary judgment regarding Central Crane's and D-T's rights (or lack thereof) under the Policy. Property-Owners requests that I find that it owes no coverage to D-T for its potential indemnity obligations to Central Crane and that it owes no duty to defend Central Crane, while Central Crane argues that D-T is entitled to coverage for the losses suffered by Central Crane.

After the motions were fully briefed, I requested additional briefing on two issues that the parties had not addressed: (1) whether Property-Owners has standing at this time to seek a declaration of its obligations to D-T, and (2) Central Crane's ability to recover directly from Property-Owners Insurance in light of precedent seemingly forbidding that course of action. The parties have submitted that briefing and now these motions are ready for my ruling.

**Discussion**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I

4

must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id*. at 255.

In essence, Property-Owners asks me to do two things: (1) declare that it has no obligation to D-T to provide coverage for any obligation D-T may have to indemnify Central Crane, and (2) declare that it has no obligation to provide coverage or defense directly to Central Crane. I'll address each of these in turn.

The first request is problematic because Property-Owners does not have an actual controversy with its insured (D-T) at this time. Under the Declaratory Judgment Act, Property-Owners may seek a declaratory judgment only where it has a "case of actual controversy." 28 U.S.C. § 2201. An "actual controversy" exists where the facts alleged "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Bell v. Taylor*, __ F.3d ___, 2016 WL 3568139 at *9 (7th Cir. Jul. 1, 2016), *quoting MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 127 (2007).

Here, Property-Owners has no case or actual controversy with D-T because Central Crane has not sued D-T for indemnification or for anything else relating to the underlying claim, and it does not appear that D-T requested any coverage or filed any claim with Property-Owners. In fact, D-T hasn't even appeared in this case. Under these circumstances, Property-Owner's action isn't ripe with respect to D-T, and I must dismiss it. *Atlanta Int'l Insurance Company v. Atchison, Topeka & Santa Fe R.R. Co.*, 938 F.2d 81, 84 (7th Cir. 1991) (finding declaratory judgment action by insurer not ripe under the Declaratory Judgment Act where insured had not yet filed a claim with insurer, even

though insured did send insurance company a notice that a judgment might be filed against the insured and a judgment was ultimately filed against the insured). That's because "[t]he mere possibility that proceedings might be commenced against an insured regarding an act of the insured's as to which the insurer might contest coverage, is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution." *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1189 (7th Cir. 1980).

More specifically, in the Seventh Circuit, an insurance company ordinarily cannot obtain a declaratory judgment regarding its duty to indemnify before its insured is found liable. *Lear Corp. v. Johnson Electric Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.") When a party seeks a declaratory judgment on an unripe duty-to-indemnify claim, it is proper for the Court "to dismiss that aspect of the case[.]" *Medical Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *Cincinnati Ins. Co. v. Maintenance Dynamics, Inc.*, 2013 WL 350080 at *4 (N.D.Ind. 2013) (citing 7th Cir. law). In other words, in order for Property-Owners to seek a declaratory judgment regarding its potential obligation to provide coverage to its insured (D-T), Central Crane would first need to seek indemnification from D-T, obtain a judgment saying D-T owes a duty to indemnify Central Crane, and then D-T would need to seek coverage from Property-Owners. Because these things have not occurred, it does not appear that there is an actual case or controversy between Property-Owners and D-T. At the very least, it is Property Owners' obligation to establish standing and they have presented nothing to

6

me to suggest that there is a live controversy between it and D-T. Property-Owner's claims against D-T must therefore be dismissed because there is no actual controversy between the parties.

There *is*, however, an actual case between Property-Owners and Central Crane. And here, Property-Owners has the better argument. Property-Owners claims it owes Central Crane no coverage under D-T's policy, and thus no duty to defend Central Crane, because Central Crane is not an additional insured under D-T's policy. The policy requires that to be an additional insured as the lessor of leased equipment, the parties must execute a written agreement naming Central Crane as an additional insured prior to a covered loss: " Section II - Who Is An Insured is amended to include as an additional insured any person or organization with whom you have agreed (1) in a written contract . . . to name as an additional insured[.]" (DE 60-5 at 129.)

Central Crane does not dispute that it is not actually named as an additional insured under the policy, and a review of the policy confirms this. (DE 60-5 at 128-130, 133, and 189.) Instead, Central Crane claims its crane operator, Patterson, was a "leased worker" to D-T under the policy and therefore an employee of D-T. In other words, Central Crane appears to be arguing that the bad acts committed by Patterson were actually the acts of D-T itself. According to Central Crane, if Patterson is an employee of D-T, then he'd be covered under the Property-Owners policy and Central Crane wouldn't be on the hook for his actions. But there are a few problems with this argument.

First, Central Crane is wrong about Patterson being D-T's employee. The policy requires that a leased employee be someone leased by a "labor leasing firm." (DE 60-5 at 153.) Although the Policy does not define what constitutes a "labor leasing firm" — and no Indiana state courts have interpreted the term — the Southern District of Indiana and a few circuit courts from other jurisdictions have, and they all have come to the same (and rather obvious) conclusion: a "labor leasing firm" is one which hires and places individuals "with client companies for varying lengths of time" and retains "the rights and obligations of an employer," while leaving the client company "responsible for training, supervision and assigning work tasks." *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2015 WL 10738615 at *9 (S.D.Ind. Dec. 10, 2015), *quoting Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 75 (1st Cir. 2009). The company at issue in *Telamon* was exactly the type of company one might think of as a labor leasing firm – it was a staffing company that provided employees to various businesses on a temporary basis. *Id*.

Central Crane, as the moniker obviously implies, is a *crane* company; it's not an employment agency or staffing firm. (DE 60-8 at 4, internal p.8:11-14.) It's not in the business of leasing employees out to other companies like a labor staffing firm does. But let's suppose Patterson was leased to D-T. At most, Patterson was a temporary employee and therefore still not an employee under the policy. Under the policy, a "temporary worker" is someone furnished to D-T "to meet seasonal or short-term workload conditions" and is excluded from coverage as an employee under the policy. (DE 60-5 at 152, 155.) Recall that D-T rented the crane for two days and Patterson worked on the job site for only one and three-quarters of a day. (DE 65-6 at 7, internal

8

p.159:17-18.) In short, Patterson wasn't D-T's employee. At most, he was filling a temporary need – a couple of days of crane work to set some trusses.

There is yet another problem with Central Crane's argument. Let's suppose that Patterson *was* D-T's employee, there would still be a problem. Since Central Crane is not an additional insured, it cannot go after Property-Owners for coverage directly because the indemnification agreement between Central Crane and D-T creates no rights for Central Crane under the Policy between D-T and Property-Owners. *Sears, Roebuck & Co. v. Royal Surplus Lines Ins.*, 61 Fed.Appx. 280, 284 (7th Cir. 2003) (relying on *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill.App.3d 590 (1st Dist. 2000)). And as much as Central Crane argues that D-T's rights are the key to its claim, Central Crane can't assert D-T's rights without D-T. *Id.* So Central Crane would still be on the hook for the money it paid in its settlement with Parke.

At most, the Rental Agreement which secured the lease of the crane is an "insured contract" whereby Property-Owners has agreed to provide coverage to D-T – *its insured* – for agreements it executes with other companies. (DE 60-5 at 137, 152 (stating it will cover D-T for D-T's "liability for damages: (1) Assumed in a contract or agreement that is an 'insured contract'" and defining an insured contract as a contract or agreement where D-T "assume(s) the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.") But, again, to get there Central Crane would have to bring an action or claim against D-T for indemnity under the terms of their contract. At that point, D-T could seek coverage from Property-Owners and argue that the indemnity agreement is an insured contract entitling it to coverage from

9

Property-Owners in order to reimburse Central Crane for the money it paid to Parke. There are several steps missing here. Thus, Property-Owners' motion will be granted regarding its claims against Central Crane, and Central Crane's motion will be denied because it cannot obtain coverage under the Policy directly from Property-Owners.

I will also dismiss Property-Owner's claims against Parke. Property-Owners stated in its complaint that "Defendants are made parties to this action to assert their respective rights and interests, if any, as to liability coverage for Central Rent-A-Crane under various insurance policies issued by Plaintiff to D-T Construction with regard to liability coverage for damages alleged in a civil lawsuit filed by Defendant John Parke against Defendants Rent-A-Crane, Builders of Wabash, Inc. and Stark Truss Company, Inc." (DE 1 at ¶9.) Presumably, Parke was named only because at the time, he was an interested party and would have been interested in the outcome of the case insofar as his state court claims had not yet been settled. But now, not only has he already settled with and been paid by Central Crane (DE 57 at ¶4), but I have decided that Property-Owners owes no duty to Central Crane directly. Since any right or claim in this matter Parke could possibly have with Property-Owners would come from Central Crane's liability, both the settlement and my ruling have mooted out any claim Park could have had. Indeed, although Parke did appear and answer in this matter, he has not otherwise participated, nor has asked that I declare that he has any rights vis-a-vis Property-Owners.

Finally, Central Crane's Motion to Strike is denied as moot. Because I have decided the case based on the issues presented in the supplemental briefing, I had no

need to evaluate or rely on the Bolinger affidavit, and it has not factored into my decision.

## Conclusion

Thus, for the reasons stated above, plaintiff Property-Owners Insurance Company's motion for summary judgment (DE 60) is **DENIED IN PART** and **GRANTED IN PART**. Defendant Central Rent-A-Crane's motion for summary judgment (DE 62) is **DENIED** and its motion to strike (DE 66) is **DENIED AS MOOT**.

Property-Owners is entitled to a **DECLARATORY JUDGMENT AGAINST DEFENDANT CENTRAL RENT-A-CRANE, INC.** stating that at this time Property-Owners owes no duty to defend or indemnify Central Rent-A-Crane, Inc. But I cannot grant Property-Owners' request for a declaratory judgment with respect to defendant D-T Constructions Services, Inc. because Property-Owners' claims against D-T must be **DISMISSED FOR LACK OF STANDING** to sue D-T. Defendant John Parke will be **DISMISSED** as a party.

Since there are no remaining claims pending in this matter, judgment may now be entered in accordance with this opinion and this matter will be **CLOSED**.

**SO ORDERED**.

ENTERED: September 14, 2016

    /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT